**AIRFIX CORPORATION OF AMERICA, B. Paul Model Distributors, Inc., Niagara Hobby Distributors, Inc., Mayflower Distributors, Inc., Holiday Hobby Distributors, Inc., and Gateway Hobby Distributors, Inc.**

**v.**

**AURORA PLASTICS CORP., K & B Manufacturing Corp., Tru-Scale Products, Inc., Abe Shikes, and John Cuomo.**

**Civ. A. No. 34299.**

United States District Court
E. D. Pennsylvania.

Oct. 24, 1963.

Dilworth, Paxson, Kalish, Kohn & Dilks, by Harold E. Kohn, Philadelphia, Pa., for plaintiffs.

Myron L. Shapiro, New York City (New York Bar) Isadore S. Wachs, Abraham L. Hodes, Wolf, Block, Schorr & Solis-Cohen, by Louis J. Goffman, Philadelphia, for defendants.

WOOD, District Judge.

This is a motion for a preliminary injunction sought by the plaintiffs who have commenced a private anti-trust action against the various defendants.

FINDINGS OF FACT

1. The plaintiff Airfix Corporation of America (hereinafter referred to as

"plaintiff Airfix") is a corporation engaged in the business of manufacturing and selling hobby kits.

2. The plaintiffs B. Paul Model Distributors, Inc., Niagara Hobby Distributors, Inc., Mayflower Distributors, Inc., Holiday Hobby Distributors, Inc., and Gateway Hobby Distributors, Inc. (hereinafter referred to as "plaintiff wholesalers") are corporations engaged in the business of distributing hobby kits and other items to retail stores, chain stores and department stores.

3. The defendant Aurora Plastics Corp. (hereinafter referred to as "defendant Aurora") is a corporation engaged in the business of manufacturing and selling hobby kits, Model Motoring and other items.

4. The defendants Abe Shikes and John Cuomo are respectively the president and vice-president of the defendant Aurora.

5. The defendant K & B Manufacturing Corp. is a corporation engaged in the business of manufacturing and selling model airplanes powered by motors.

6. The defendant Tru-Scale Products, Inc. is a corporation engaged in the business of manufacturing and selling HO model railroad tracks and accessories.

7. The defendant K & B Manufacturing Corp. is a wholly owned subsidiary of the defendant Aurora.

8. The defendant Tru-Scale Products, Inc. is an 80% owned subsidiary of the defendant Aurora.

9. Bernard Paul, who is an executive officer, director and principal stockholder in control of the plaintiff wholesalers, recently acquired an equity interest in the plaintiff manufacturer Airfix Corporation, and became its president and a director.

10. Defendants and plaintiffs sell and promote their respective products in interstate and foreign commerce, either directly or though wholesalers and jobbers to chain stores, department stores, and other retail dealers, in various parts of the United States.

11. Defendant, Aurora Plastics Corp., is the largest domestic manufacturer of hobby kits in the United States, and is the primary force in the expanding field of model motoring.

12. Its products are essential to complete line wholesale distributors, such as plaintiff wholesalers here, and include plastic hobby kits, coppercraft tooling sets, electronic model kits, plastic toys and related items.

13. Other manufacturers whose products are distributed by the plaintiff wholesalers are: Hawk, Revell, Monogram, Testor, and A.M.T., among others.

14. The success or failure of the plaintiff wholesalers' business depends upon their ability to supply new merchandise to the chain stores as it becomes available which may occur in the industry as frequently as every two days.

15. It is essential that only the best selling merchandise be supplied without any consideration as to the name of the manufacturer.

16. The plaintiff wholesalers purchase $600,000 yearly from the defendant Aurora and have been a large customer of Aurora for 12 years.

17. No serious credit difficulties or friction had existed between the plaintiff wholesalers and Aurora during this time until August 28, 1963.

18. The harmony of their relationship was disturbed when Aurora made known to Bernard Paul its displeasure over the equity interest which Bernard Paul recently obtained in Airfix Corporation, a competitor of Aurora.

19. At a meeting held in the Aurora offices in New York on August 28, 1963, Abe Shikes, president of Aurora, threatened to discontinue selling the Aurora line to the plaintiff wholesalers unless they ceased servicing products produced by Airfix.

20. On August 28, 1963, during the same meeting defendant Abe Shikes exerted pressure and coercion to force plaintiff wholesalers to discontinue the Airfix line, threatening to eliminate the

plaintiffs from their business of supplying chain stores.

21. Airfix Corporation had been a British corporation until April 1963 when the present corporate entity was formed.

22. Since that time the Airfix product has improved and become a competitive line with Aurora.

23. On or about September 5, 1963, Abe Shikes and Dimon Diamond, representatives of Aurora, met in Chicago with other manufacturers to discuss the credit problems of National Model Distributors who had filed a Chapter XI proceeding.

24. While at this meeting, Abe Shikes met and discussed with several other manufacturers the competitive problems posed by the products produced and marketed by Airfix, and Aurora was to assume the lead in suppressing the sale of the products manufactured by Airfix.

25. As a direct result of this meeting Aurora discontinued the sale of its products to the plaintiff wholesalers on September 24, 1963.

26. Shortly thereafter, A.M.T., Hawk and Revell stopped deliveries to the plaintiff wholesalers.

27. Revell imposed a $100,000 credit limit on the plaintiff wholesalers who already had purchased $98,000 worth of goods from Revell.

28. Testor Chemical Co., which supplies the basic glue necessary in assembling the hobby kits, drastically reduced its deliveries to the plaintiff wholesalers.

29. A loss of any two of the above-named manufacturers would cause the plaintiff wholesalers to lose the right to service the aforementioned major chain stores.

30. This is particularly serious in view of the approaching holiday buying season which is the most important economic period of the plaintiff wholesalers' marketing year.

31. A manufacturers' representative, William Korr, representing plaintiff Airfix, and defendant, K & B Manufacturing Corp., a wholly owned Aurora subsidiary, and other manufacturers, was warned by defendants Aurora and K & B that they would not permit him to continue to represent K & B if he persisted in representing Airfix. This representative has since received notice from defendant K & B that he was no longer authorized to represent it.

32. Other wholesalers who were customers of the plaintiff Airfix were threatened in a similar manner recently by Aurora.

33. On September 30, 1963, during a meeting held in New York City at Aurora's offices, defendant Abe Shikes repeated his earlier threats to a representative of the plaintiffs.

34. The plaintiff wholesalers have suffered a loss of $34,000 to $40,000 in Philadelphia during the month of September due to their inability to supply the top selling merchandise of Hawk and Aurora.

35. The inability of plaintiff wholesalers to supply its customers with defendant Aurora's merchandise makes it basically impossible for said plaintiffs to operate the major part of their present business.

## DISCUSSION

This case arises under the Antitrust Laws of the United States, commonly known as the Sherman Act or Clayton Act, 15 U.S.C.A. §§ 1, 2, 4, 12, 16, 22 and 26.

Essentially, the defendant Aurora asserts that it has merely made a unilateral refusal to deal with the plaintiffs because the principal officer of the wholesalers now has an equity interest in a competitor, Airfix Corporation of America. This in turn it is alleged creates a conflict of interests or divided loyalties on the part of the plaintiffs in their distribution of Aurora's products.

No such situation presently exists nor was credible evidence produced to show a reasonable possibility of its occurrence in the future. Quite to the contrary, the plaintiffs have vividly proved that they

provide an indiscriminate marketing arrangement for all hobby manufacturers. Only the novelty of the product and the resultant consumer demand dictates which manufacturer will receive the bulk of the wholesalers' business. This is an extremely fluid market and competition is keen for the outlets serviced by the plaintiff wholesalers. The plaintiffs have shown that they have enjoyed amicable business relations with all hobby manufacturers for many years. It was only when the Airfix line became an American manufacturer that Aurora saw the necessity to resort to restrictive measures against the plaintiffs.

Being the leader in the industry, Aurora alerted the other manufacturers to the threatened peril of the increased competition presented by Airfix. By imposing its will on other wholesalers, and corraling support from competing manufacturers, Aurora effectively cut the jugular of supply open to the plaintiff wholesalers, thereby accomplishing a concerted boycott of Airfix products throughout the country.

A manufacturer such as Aurora who conspires with others to accomplish what he could lawfully achieve when acting alone may violate § 1 of the Sherman Act. Opinion of U. S. Court of Appeals, 9th Circuit, Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1.

"Thus, whether an unlawful combination or conspiracy is proved is to be judged by what the parties actually did rather than by the words they used." United States v. Parke Davis & Co., 362 U.S. 29, 44, 80 S.Ct. 503, 512, 4 L.Ed.2d 505 (1959).

We cannot say that the plaintiffs have not demonstrated a reasonable probability that they will be successful in their main action under the antitrust laws. They have also proved that irreparable harm will result if a preliminary injunction does not issue.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under the antitrust laws.

2. The record evidences substantial question as to the legality of the acts of the defendants and it appears probable that plaintiff wholesalers will establish a violation of the antitrust laws of the United States upon final hearing.

3. Immediate and irreparable injury will result to plaintiff wholesalers if a preliminary injunction is not granted.

4. The balance of conveniences weighs heavily in favor of plaintiff wholesalers and the preliminary injunction should issue to maintain the status quo pending final decision.

5. Plaintiffs have no plain, speedy or adequate remedy at law with respect to the matters herein found.

## ORDER
## PRELIMINARY INJUNCTION

AND NOW, this 24th day of October, 1963, upon consideration of the record, including request for findings of fact and conclusions of law, and hearing and oral argument having been had, and it appearing that irreparable injury, loss and damage will result to the applicants unless this preliminary injunction issues forthwith, preliminarily, until final hearing and decision, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. Defendants Aurora Plastics Corp., K & B Manufacturing Corp., and Tru-Scale Products, Inc., be and they hereby are restrained and enjoined from discontinuing the sale of hobby kits and similar merchandise to plaintiffs B. Paul Model Distributors, Inc., Niagara Hobby Distributors, Inc., Mayflower Distributors, Inc., Holiday Hobby Distributors, Inc., and Gateway Hobby Distributors, Inc., and are hereby Ordered to continue with such sales in the usual course of business as it existed prior to the institution of the instant proceedings.

It is further directed that the terms and conditions of payment shall be as provided on the invoices covering the goods sold and the terms and conditions of the invoices shall be as heretofore. The defendants are further Ordered to fill promptly purchase orders heretofore

placed with them by said plaintiff wholesalers.

2. The Court having been advised that a general appearance has been entered for the defendants in the collateral foreign attachment proceedings, the plaintiff or plaintiffs are Ordered and Directed to forthwith make provision for the release and payment over to the defendant or defendants in the sum of approximately $106,000 presently held in those foreign attachment proceedings.

3. The defendants Aurora Plastics Corp. and K & B Manufacturing Corp., be and they hereby are restrained and enjoined from discontinuing the sale of hobby kits and similar merchandise through William Korr as a manufacturers' representative of Airfix upon the usual terms and conditions of payment.

4. Defendants are further restrained and enjoined from endeavoring to coerce, intimidate or induce, and from coercing, intimidating or inducing other manufacturers of hobby kits and similar merchandise, to discontinue dealing with plaintiffs or any of them; from discontinuing the sale of merchandise to plaintiffs, or any of them, or to other persons dealing with plaintiffs or handling plaintiffs' merchandise, upon usual and customary terms and conditions of payment, imposing onerous and unusual conditions of sale, for the purpose of coercing, intimidating or inducing plaintiffs other than Airfix Corporation of America or other persons from dealing in Airfix Corporation of America merchandise and in the case of such other persons from dealing with any of the plaintiffs.

5. Any outstanding indebtedness existing between the parties in this litigation which is due and payable in accordance with the invoices as herein set forth shall be liquidated and paid on or before Monday, October 28, 1963. On failure to do so, defendants may move the Court to modify or dissolve this preliminary injunction.

6. Any party hereto may on 48 hours' notice to the adverse parties apply for amendment, clarification or relief from the provisions of this decree.

This decree shall become effective upon the filing of a bond by plaintiffs in the amount of $25,000.