**EREWHON, INC., Plaintiff,**

v.

**NORTHEAST HEALTH FOOD MERCHANTS et al., Defendants.**

Civ. A. No. 77–0339–S.

United States District Court,
D. Massachusetts.

March 10, 1977.

Robert C. Gerrard, Carolyn T. Ross, Bowker, Elmes, Perkins, Mecsas, Gerrard, Boston, Mass., for plaintiff.

Philip J. Crowe, Jr., Snider, Crowe, Sbrogna, Richard A. Savrann, John G. Fabiano, Hale & Dorr, Boston, Mass., for defendants.

## MEMORANDUM AND TEMPORARY RESTRAINING ORDER

SKINNER, District Judge.

This is an antitrust action brought pursuant to sections four and sixteen of the Clayton Act, 15 U.S.C. §§ 15 & 26, for injunctive relief and damages for alleged violations of sections one and two of the Sherman Act, 15 U.S.C. §§ 1 & 2. The plaintiff, Erewhon, Inc. (Erewhon), is a processor and distributor of health and natural foods at wholesale and retail. The defendants include: Northeast Health Food Merchants (Northeast), an unincorporated trade association consisting of owners of retail stores selling health and natural foods; several individuals, officers and directors of Northeast and owners of retail stores; retail health and natural foods stores; two competitors of the plaintiff, engaged in processing and wholesale distributing of health and natural foods; and unidentified individual and corporate defendants.

The complaint alleges the concerted implementation of a group boycott of Erewhon's products. The plaintiff states that the defendant-retailers have since 1975 complained to Erewhon employees about Erewhon's practice of selling to food cooperatives, viewed by the retailers as competitors in the sale of natural and health foods. When the plaintiff continued to sell to food co-ops, the retailers threatened to boycott the purchase of Erewhon's products. The defendant-retailers, according to the plaintiff, have organized a group boycott through Northeast for the purpose of forcing Erewhon through economic pressure to discontinue its sales to food co-ops. The complaint alleges that two of Erewhon's competitors in the wholesale market, Shadowfax Foods Corp. (Shadowfax) and Earth-Bound, Inc. (Earth-Bound), have succumbed to this pressure and have discontinued their sales to food co-ops, thereby obtaining Erewhon's pre-boycott share of sales to the defendant-retailers.

A hearing was held on February 9, 1977, on the plaintiff's motion for temporary restraining orders, at which several of the

defendants were represented. The plaintiff had sent notice to all identified defendants by certified mail/return receipt requested and by telegram. Several affidavits and exhibits were presented to the court in addition to those appended to the complaint. The plaintiff withdrew its request for injunctive relief directed to defendant Shadowfax on the representation that it could not at that time present evidence linking Shadowfax to the conspiracy.

## FINDINGS OF FACT

For the purpose of this temporary restraining order, I find the following facts. Various retailers have told a salesman for Erewhon that they have stopped buying from Erewhon because it sells to organizations without a "storefront," especially food co-ops. The retailers have informed the salesman of the organization of Northeast and of the concerted nature of their refusal to purchase from Erewhon. A document entitled "THE ECONOMICS OF RETAIL BUSINESS—Lesson 2" was written and circulated by defendant Alex Rossmann, a retailer and Chairman of Northeast. Mr. Rossmann admitted authorship of the document at the hearing. The document explains that a retailer in effect finances its distributor and that the distributor breaches "common basic loyalty" owed to the retailer by "sell[ing] directly to [the retailer's] customers at wholesale prices." "Lesson 2" concludes: "Naturally, it can be seen as a matter of the greatest importance to the prudent retailer that he carefully select the distributors whom he finances and to whom he allows legitimacy and shelf space." Exhibit C to Complaint.

A questionnaire received by Erewhon from the Distributor Committee of Northeast, under a cover letter dated December 1, 1976, addressed generally to distributors, reads as follows:

"Our organization represents the health food stores of the northeast. We are conducting this survey in order to to [sic] evaluate all distributors for certification for our member stores. This certification is being done for our members in order that they may choose distributors who offer the best in quality, terms and service.

"Please fill out the enclosed questionaire and mail it back to us as promptly as possible so that we may complete our certification of your firm.

"Thank you for your cooperation now and in the future."

The questionnaire does contain items relating to quality of service and terms of delivery, but it also asks questions unrelated to its stated purpose. The Distributor Committee inquires whether the distributor sells "exclusively to health food stores" and, if not, to what "other types of establishments" the distributor sells, listing several categories including "co-ops" and "individuals." The questionnaire then asks whether the "other establishments" maintain storefronts open forty hours per week and "full inventory." In this connection, the Distributor Committee concludes by inquiring: "Would you agree not to sell to individuals or organizations who do not operate a storefront market place?"

The defendant Earth-Bound has yielded to pressure from retailers and has discontinued its sales to food co-ops.

With few exceptions, the retailers discontinued their purchases from Erewhon in 1976, many of them in March and June. Defendants James and Celia Letz, owners of Organic Food Center, last purchased from Erewhon on February 27, 1975, however. They placed only one order with Erewhon in 1974 and three orders in 1975.

Erewhon has lost five percent of its market since the inception of the boycott. If Erewhon's products do not appear in the stores of retailers participating in the boycott, the plaintiff might incur "a substantial loss of the good will of the consuming public." Erewhon has been planning capital expansion, and certain banks "have expressed their concern" over the boycott.

Northeast was formed in September 1976 and currently has forty-three members. Nine of its forty-three members "do not currently do business with the plaintiff."

Mr. Rossmann maintains that he personally stopped purchasing from Erewhon for legitimate business reasons.

■ Section sixteen of the Clayton Act, 15 U.S.C. § 26, authorizes preliminary and permanent injunctive relief in private antitrust litigation

> "when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity."

I am persuaded that the plaintiff has sufficiently demonstrated a strong probability of success on the merits of its claim and a danger of immediate and irreparable injury from the continued conduct of the defendants so that temporary injunctive relief should issue. Fed.R.Civ.P. 65.

Group boycotts are per se unreasonable and violative of the Sherman Act. *Northern Pac. Ry. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), *citing Fashion Originators' Guild v. FTC*, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); *Evening News Pub. Co. v. Allied Newspaper Carriers*, 263 F.2d 715, 718 (3d Cir. 1959). Any merchant may unilaterally refuse to purchase the goods of a wholesaler.

> "But unilateral action, which in the absence of the alleged conspiracy would be lawful, is nonetheless regarded as transgressing the antitrust laws where it is the result of a conspiracy in restraint of trade and undertaken pursuant to conspiratorial aims."

*McKesson & Robbins, Inc. v. Charles Pfizer & Co.*, 235 F.Supp. 743, 749 (E.D.Pa.1964); *see Airfix Corp. of Amer. v. Aurora Plastics Corp.*, 222 F.Supp. 703, 706 (E.D.Pa.1963). The affidavits and exhibits presented at the hearing indicate a strong probability that the defendant-retailers have acted in concert in terminating their purchases of Erewhon's products and that Earth-Bound's decision not to supply food co-ops or individuals was in furtherance of the conspiracy.

The plaintiff's showing of the danger of irreparable harm satisfies the appropriate standard in an antitrust case. Fed.R.Civ.P. 65. *See Jacobson & Co. v. Armstrong Cork Co.*, 416 F.Supp. 564, 566 (S.D.N.Y.1976).

Erewhon alleges that a continued loss of sales to retailers participating in the boycott would substantially impair its ability to function as an operating entity. More significantly, it states that the absence of Erewhon's products from the retail stores would lead to "a substantial loss of the good will of the consuming public," especially considering the increasing public demand for health and natural foods. Erewhon is a consumer-oriented company and not within the rule of *Automatic Radio Mfg. Co. v. Ford Motor Co.*, 390 F.2d 113, 116 (1st Cir.), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968).

■ The plaintiff requests that the defendant-retailers be ordered in effect to purchase goods from Erewhon in amounts and on terms existing prior to the boycott. Many courts have enjoined participants in a concerted refusal to deal from continuing to refuse to deal with the plaintiff. *International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.*, 351 F.Supp. 1153, 1208 (D.Hawaii 1972), *modified*, 518 F.2d 913 (9th Cir. 1975); *see, e. g., Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725, 726 (3d Cir. 1962); *Evening News Pub. Co. v. Allied Newspaper Carriers*, 263 F.2d 715, 717 (3d Cir. 1959); *Jacobson & Co. v. Armstrong Cork Co.*, 416 F.Supp. 564, 570 (S.D.N.Y. 1976); *Interphoto Corp. v. Minolta Corp.*, 295 F.Supp. 711, 724 (S.D.N.Y.), *aff'd per curiam*, 417 F.2d 621 (2d Cir. 1969); *McKesson & Robbins, Inc. v. Charles Pfizer & Co.*, 235 F.Supp. 743, 751 (E.D.Pa.1964); *Airfix Corp. of Amer. v. Aurora Plastics Corp.*, 222 F.Supp. 703, 706–07 (E.D.Pa.1963); *Greenspun v. McCarran*, 105 F.Supp. 662, 667 (D.Nev.1952).

Similar temporary injunctive relief is warranted in this case. With respect to James and Celia Letz and the Organic Food Center, however, the plaintiff has not demonstrated sufficiently that their termination of purchases from Erewhon after February 27, 1975, was in furtherance of a group boycott. Organic Food Center placed only one order with Erewhon in 1974 and three orders in 1975. Although Organic

Food Center may not participate in any way in a conspiracy to boycott Erewhon's products, it should not be ordered to purchase goods from Erewhon.

## ORDER

Accordingly, it is hereby ORDERED that:

(1) Northeast Health Food Merchants and its officers, directors and members are enjoined from conducting any activity in connection with a concerted refusal to purchase the products of Erewhon, Inc., including urging any party to refuse to purchase Erewhon's products, disseminating information relevant to a refusal to deal with Erewhon and meeting to discuss a refusal to deal with Erewhon;

(2) the officers of the defendant Northeast are to inform its membership without delay of this order;

(3) each of the defendant retailers, with the exception of James and Celia Letz and the Organic Food Center, is enjoined from refusing to purchase from Erewhon, during each period of twelve consecutive months commencing on and after April 1, 1977, a quantity of each product then currently offered for sale by Erewhon that is equal to the quantity of the same product purchased by such retailer from Erewhon during the twelve-month period commencing on June 1, 1975, and each of the defendant retailers is further ordered to display prominently Erewhon's products; provided, that such retailer shall not be required to purchase such product from Erewhon unless the price charged by Erewhon is equal to or lower than the lowest price at which such product is offered for sale by one or more suppliers of competitive products and unless Erewhon offers terms and conditions of sale, including credit, delivery and service, that are at least as favorable to the retailer as those offered by Erewhon prior to the termination by such retailer of purchases from Erewhon;

(4) the defendant Earth-Bound, Inc., is enjoined from refusing to sell its products to food cooperatives in Connecticut, Massachusetts and Rhode Island at the same prices and on the same terms and conditions that apply to its sales to retail health and natural food stores, and the defendant Earth-Bound is further ordered to notify every food cooperative in Connecticut, Massachusetts and Rhode Island to which it has refused to sell that during the pendency of this action, Earth-Bound will no longer refuse to sell its products to said food cooperative.

This order shall be effective upon the filing by the plaintiff of a bond in the amount of $1,000.00. All the defendants having received notice of the February 9 hearing on plaintiff's motion for a temporary restraining order, this order shall remain in effect pending the termination of this suit until further order of this court.

The issuance of this order, of course, intimates no final view on the merits of the plaintiff's claim.