BERGEN DRUG COMPANY Inc., a New Jersey Corporation, Appellant,

v.

PARKE, DAVIS & COMPANY, a Michigan Corporation.

No. 13934.

United States Court of Appeals Third Circuit.

Argued June 7, 1962.

Filed Aug. 29, 1962.

As Amended Sept. 19, 1962.

Rehearing Denied Sept. 27, 1962.

Alan V. Lowenstein, Newark, N. J., (Lowenstein & Spicer, Murry D. Brochin, Newark, N. J., on the brief), for appellant.

Gerhard A. Gesell, Washington, D. C., (Donald B. Kipp, Clyde A. Szuch, Pitney, Hardin & Kipp, Newark, N. J., William H. Allen, Covington & Burling, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

On September 27, 1961, plaintiff, Bergen Drug Company, Inc., commenced a private antitrust action against defendant, Parke, Davis & Company. The complaint, as amended, contained the usual prayer for treble damages and requested a permanent injunction enjoining defendant from refusing to sell its products to plaintiff upon the same terms as they are sold to other purchasers.[1]

On October 12, 1961, plaintiff received a letter from defendant which stated:

"We have concluded that we do not wish to make further use of the distribution facilities of Bergen Drug Company, Inc.

"We are, therefore, closing your account permanently, effective immediately."

Shortly before, plaintiff's subsidiaries received substantially similar letters from defendant.

Confronted with defendant's action, plaintiff filed a motion in the district court for an injunction pendente lite requesting that defendant be enjoined from cancelling or threatening to cancel the accounts of plaintiff and its wholly-owned subsidiary, from refusing to fill their orders, and requiring defendant to sell and deliver merchandise to them upon the same terms and conditions as such merchandise was being sold and delivered to competing wholesalers.

The district court, concluding that there existed no "statutory or other legal basis" for granting the injunction pendente lite, denied the motion.[2] It is from this order that plaintiff has appealed.[3]

Plaintiff contends that aside from any statutory basis, the federal courts possess a broad equity power to grant an injunction pendente lite, and that such an injunction, under the facts, should have been granted in order to avoid irreparable economic harm to it, and to prevent undue interference with the orderly litigation of the main antitrust action. Defendant says that no occasion exists for the exercise of equity jurisdiction since there has been no actual or threatened interference with the district court's jurisdiction or processes, and further, that plaintiff has failed to establish irreparable harm.

■ We think that the district court, as a court of equity, did possess power to issue the preliminary injunction.

This court's recent decision in Bateman v. Ford Motor Co., 302 F.2d 63 (C.A.3, 1962), helps in the disposition of this appeal. There, plaintiff, a franchised distributor of Ford automobiles, brought an action under the "Dealers Day in Court Act," 15 U.S.C.A. §§ 1221–1225, and asked for a preliminary injunction pending disposition of a claim for damages and permanent injunctive relief. The district court denied relief on the grounds that the statutory right to damages was the exclusive remedy. We reversed, concluding that the court possessed equity powers to compel the parties to continue their relationship pending disposition of the main claim. What we did there was to apply to different circumstances the equity rule that where a party performs "acts sought to be enjoined, the court may, by mandatory injunction, compel a restoration of the status quo," pending a final adjudication of the matter. Texas & New Orleans R. R. Co. v. Northside Belt Ry. Co., 276 U.S.

1. Plaintiff requested further injunctive relief which is immaterial to our disposition of the appeal.

2. The opinion of the district court is not officially reported. The district court orally denied plaintiff's motion on October 18, 1961. Thereafter, but before the district court filed its findings of fact and conclusions of law, or entered its decree, plaintiff, by an amendment to its complaint in the antitrust action, requested the same injunctive relief that was requested pendente lite.

3. No answer to the complaint in the main action had been filed by defendant at the time the district court orally denied preliminary relief.

475, 479, 48 S.Ct. 361, 72 L.Ed. 661 (1928). The existence of such a power was recognized recently by the Second Circuit in House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867, 871–872 (C.A.2, 1962),[4] and the instances where it has been applied are many.[5] A temporary injunction to maintain the status quo has been granted although the final relief sought was legal and not equitable in nature. Chicago, M. & St. P. Ry. Co. v. Schendel, 292 F. 326 (C.A.8, 1923); State of Ohio ex rel. Stevens v. Industrial Commission of Ohio, 102 Ohio App. 47, 136 N.E.2d 660 (1955); Hamlet Hospital & Training School for Nurses v. Joint Committee, 234 N.C. 673, 68 S.E.2d 862 (1952). Plaintiff is not only seeking money damages in the main action but asks for a permanent injunction identical to the temporary relief requested.

What remains for us to determine is whether to remand the case to the district court so that it might first exercise its discretion on plaintiff's motion. Defendant takes the position that even assuming the power to grant temporary relief existed, it should not be exercised here because under the Supreme Court's decision in United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), it had a right to refuse to deal with plaintiff, and, therefore, temporary relief must be denied. We think, however, that Colgate is inapposite here. The Colgate Company was indicted for entering into a combination with wholesale and retail dealers for the purpose of fixing resale prices. The Supreme Court affirmed the action of the district court which sustained a demurrer to the indictment on the basis that a manufacturer can specify resale prices to its wholesalers and retailers and refuse to deal with anyone who fails to maintain them without violating the antitrust laws. In the instant case, a civil action, the gravamen of the main claim is discriminatory dealing and monopolizing and attempting to monopolize which, of course, is unrelated to the resale price maintenance policy involved in Colgate.

In that case, furthermore, the Supreme Court qualified its statement concerning a seller's freedom to choose customers by indicating that the rule would not apply where there is a purpose to create or maintain a monopoly. The undisputed facts here are that the buyer-seller relationship was discontinued because of the filing of the main action. True enough, the defendant can choose customers, but it should not be permitted to do so in order to stifle the main action, especially where it is apparent that such conduct will further the monopoly which plaintiff alleges defendant is attempting to bring about and which, if proved, would entitle plaintiff to permanent relief. Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). The possibility that the court may decide the right to permanent relief adversely to plaintiff does not preclude it from granting the temporary relief. Burton v. Matanuska Valley Lines, Inc., 244 F.2d 647, 650, 17 Alaska 298 (C.A.9, 1957).

It is clear to us, based on the unchallenged facts in the record, that a temporary injunction should have been granted.

Private actions are an important means of enforcing the antitrust laws of the United States. Such actions are a vehicle for serving not only the immediate interests of the litigants, but the continuing interest of the public in a smoothly functioning and unobstructed

4. For earlier Second Circuit decisions, see Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 227 F. 46 (1915); Greater New York Film Rental Co. v. Biograph Co., 203 F. 39 (1912).

5. Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199 (1946); Texas & New Orleans R. R. Co. v. Northside Belt Ry. Co., 276 U.S. 475, 48 S.Ct. 361, 72 L.Ed. 661 (1928); B. W. Photo Utilities v. Republic Molding Corp., 280 F.2d 806 (C.A.9, 1960); Burton v. Matanuska Valley Lines, Inc., 244 F.2d 647, 17 Alaska 298 (C.A.9, 1957); Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., 54 F. 730, 19 L.R.A. 387 (N.D.Ohio, 1893); 15 A.L.R.2d 213 (1951).

system of commerce. Congress voiced its recognition of the importance of private actions by enacting special provisions for treble damages and attorneys' fees. That, indeed, weighs heavily with this court in considering whether equity jurisdiction should be exercised.[6]

Plaintiff is a "full-line, full-service wholesaler," which means that it carries products of the major manufacturers of pharmaceuticals, proprietaries, toiletries, and traditional drugstore sundries. Its customers are retail pharmacies and hospitals. Pharmacies prefer to deal with a full-line, full-service wholesaler who can meet all their needs in one order.

Many of defendant's products are indispensable to the operation of a retail pharmacy. A large number of defendant's drugs are specified in physicians' prescriptions, and under the law substitution is forbidden. Other products of defendant are trademarked drugs, and some of those not sold under a trademark have no functional equivalent. On the average, twenty-five per cent of the orders received by plaintiff call for at least one of defendant's products. If plaintiff is unable to fill the retail druggist's needs for one item, the druggist will turn to another wholesaler who can do so, thereby causing a permanent loss of business.

It would be impossible to estimate or compute plaintiff's damages for the loss of good will which it will suffer as a result of being unable to provide its retail customers with service at least equally as good as that furnished by other wholesalers who have a continuing access to defendant's products. Goods supplied to it by defendant are not otherwise available. Defendant says that it will not interfere with plaintiff's efforts to purchase products manufactured by defendant from other wholesalers. But the record fails to show that plaintiff could purchase such products under the same terms that it had purchased them from defendant.

Defendant concedes that the accounts were terminated because of the initiation of the antitrust action and has not challenged the district court's finding that its conduct was actuated either by a feeling of resentment or disapproval. Such a finding was not only a permissible one, but was clearly required under the facts. It appears that defendant has not refused to sell its products to any other drug wholesaler in New Jersey or Connecticut. Plaintiff has purchased large amounts of supplies from defendant, having dealt with it for twelve years. One of plaintiff's subsidiaries has dealt with defendant for forty years.

■ Plaintiff alleges that if a preliminary injunction is not granted, it will be impossible for it to successfully prosecute the main claim under the antitrust laws. The point plaintiff convincingly makes is that it will be unable to secure the cooperation of other wholesalers and of retailers to be witnesses because they fear the same sort of retaliatory action that plaintiff has experienced. Certainly, a court can act where a party's conduct is calculated to frustrate litigation. Crosley Corp. v. Hazeltine Corp., 122 F. 2d 925 (C.A.3, 1941), cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942) ; see also House of Materials, Inc. v. Simplicity Pattern Co., 2 Cir., 298 F. 2d 867.

There is nothing here to show that enforcement of a preliminary injunction will impose any difficulties on the district court. The relationship between the parties has been impersonal, with little or no personal contact between them. Plaintiff prepares its orders through use of an IBM machine, and the supplies are delivered from defendant by common carrier.

The inconveniences, if any, that defendant will undergo if called on to continue to deal with plaintiff are slight, while those that plaintiff has and will experience in the future are burdensome.

---

6. Final Report of the Attorney General's National Committee to Study the Antitrust Laws, pp. 378–388 (U.S.Govt.Printing Office, 1955) ; Comment, 61 Yale L.J. 1010, 1057–1058 (1952).

Defendant has failed to assert that a preliminary injunction will in any way be oppressive. Indeed, the record shows that if plaintiff is unable to satisfy consumer demands for defendant's products, other wholesalers will do so. Plaintiff, of course, has the burden of going forward with the antitrust action as expeditiously as the circumstances will allow.

The decree of the district court will be reversed and the cause remanded with directions to grant the preliminary injunction prayed for.