**ORSON, INC., Plaintiff,**

v.

**MIRAMAX FILM CORP., Defendant.**

**No. 93–CV–4145.**

United States District Court,
E.D. Pennsylvania.

Nov. 9, 1993.

---

**310**

Niels Korup, Spector, Gadon and Rosen, P.C., Philadelphia, PA, for plaintiff.

Barbara T. Sicalides, Thomas E. Zemaitis, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The matter before the Court is plaintiff's application for a preliminary injunction to restore the status quo of the parties during the pendency of litigation. Plaintiff, Orson Inc., trades as the Roxy Screening Rooms, which is a movie theater in central Philadelphia. Defendant Miramax Film Corporation is a film distributor. Prior to the institution of plaintiff's lawsuit, plaintiff had received fourteen releases from Miramax which played at the Roxy Theater over a one and a half year period. Out of these fourteen releases, two of them were for first-runs, whereas the other twelve were for subsequent runs only.[1]

On August 2, 1993, plaintiff filed a complaint against defendant alleging that defendant had engaged in a conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1 et seq., the Pennsylvania common law against unreasonable restraint of trade, and the Pennsylvania feature motion picture fair business practices law, 73 P.S. § 203-1 et seq. Plaintiff claimed that defendant and another movie theater in Philadelphia called the Ritz have conspired with one another to stifle competition in the market for the exhibition of art films.[2] Plaintiff essentially claimed that because Miramax has offered the Ritz approximately twenty-two of its films for exclusive first run engagements during a one and a half year period, and because plaintiff has only been able to obtain films from Miramax on a subsequent run basis despite its bids for these same films received by the Ritz, defendant and the Ritz are engaged in a conspiracy.

After plaintiff initiated its lawsuit, defendant refused to license any more films to plaintiff during the pendency of the lawsuit. Plaintiff's amended complaint filed on August 19, 1993 reflected this fact, and defendant admitted this in its answer to the amended complaint filed on September 23, 1993. However, defendant expressly denied that the sole reason for refusing to license one particular film to plaintiff called "Strictly Ballroom" was because of plaintiff's actions in instituting the lawsuit.

---

1. In the film distributorship world, if a movie is shown when it is first released, then it is considered a first run for the time period during which the movie plays at a particular theater. On the other hand, a subsequent run is when a theater begins to show a movie that has already been played as a first run elsewhere, and possibly shown by other theaters in the area.

2. Unlike commercial films such as "Star Wars" and "Home Alone," art films, which consist of such movies as "The Crying Game," "Like Water for Chocolate" and "Enchanted April," are featured at certain movie theaters which usually only show art films. Many art films consist of subtitled foreign films.

In its motion for a preliminary injunction, plaintiff now seeks an order from this Court compelling defendant to do business with plaintiff during the pendency of the lawsuit. Interestingly, although plaintiff admits it has only received almost all subsequent runs from defendant prior to instituting the lawsuit, plaintiff submits a proposed order that, if granted, would compel defendant to release ten films of plaintiff's choice to plaintiff on the same terms as those offered to the Ritz during a twelve month period following the entry of the order. Although plaintiff initially seeks an order to restore the status quo, apparently plaintiff's greed has gotten the better of it, and it now asks the Court to give it something it never had in the first place. Plaintiff's greed notwithstanding, it has failed to prove the essential elements for the grant of a preliminary injunction, and therefore, its request will be denied.

### Standard

■ Preliminary injunctions are an extraordinary remedy, and are discretionary with the trial judge. *Skehan v. Board of Trustees of Bloomsburg State College*, 353 F.Supp. 542, 542 (M.D.Pa.1973). They will only be granted when plaintiff can demonstrate the requisite elements of the remedy. *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3rd Cir.1988). Before an injunction will be granted, plaintiff must demonstrate by sufficient evidence: 1) a likelihood of success on the merits, 2) the probability of irreparable harm if the relief is not granted, 3) that granting injunctive relief will not result in even greater harm to the other party and 4) that granting relief will be in the public interest. *Id.; Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3rd Cir.1987). Further, in defining irreparable harm, it is not enough to establish a risk of irreparable harm, rather, there must be a clear showing of immediate irreparable injury. *Ecri*, 809 F.2d at 226 (citations omitted). Nor is it enough for the harm to be serious or substantial, rather, it must be so peculiar in nature that money cannot compensate for the harm. *Id.* (citations omitted).

### Discussion

In its motion, plaintiff relies almost solely on *Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725 (3rd Cir.1962) to support its argument that it is entitled to a preliminary injunction. Plaintiff argues that this case falls squarely within the facts of *Bergen*, therefore a preliminary injunction is warranted.

In *Bergen*, plaintiff, a wholesaler, had instituted a private antitrust action against defendant, a drug manufacturer. Subsequent to plaintiff's actions, the defendant closed plaintiff's account stating that it no longer wanted to use plaintiff's distribution facilities. The court found that defendant discontinued its business because of the filing of the antitrust action by plaintiff, and further, that defendant conceded that fact.

The court held that while companies have the right to choose whom to do business with, that they "should not be permitted to do so in order to stifle the main action, especially where it is apparent that such conduct will further the monopoly which plaintiff alleges defendant is attempting to bring about and which, if proved, would entitle plaintiff to permanent relief." *Id.* at 727. The court also added that a preliminary injunction would not be refused simply because the court might decide adversely against plaintiff in the main action. *Id.*

The court then granted the preliminary injunction *based upon the unchallenged facts in the record.* The court found the following: first, plaintiff was a full-line, full-service wholesaler, which meant that pharmacies preferred to deal with such wholesalers because all their needs could be met at one time. The court found that many of defendant's products were "indispensable to the operation of a retail pharmacy." *Id.* at 728. If plaintiff was unable to fill its customers' needs, the court found that its customers would go elsewhere, thereby causing plaintiff a permanent loss of business.

Second, it would be nearly impossible to compute plaintiff's damages for the loss of goodwill it would suffer as the result of being unable to provide its customers with defendant's products. The court found that there

was no indication in the record that plaintiff could purchase defendant's products elsewhere under the same terms as it purchased them from defendant. Third, if the preliminary injunction was not granted, plaintiff would not be able to successfully prosecute its antitrust action because it would not be able to secure other wholesalers and retailers as witnesses because they would also fear retaliation by defendant. Fourth, there was no indication to the court that the preliminary injunction would be difficult to administer. Rather, plaintiff prepared its orders by an IBM machine, and the supplies were delivered by common carrier, thus there was little or no personal contact between the parties. Finally, defendant failed to assert that the preliminary injunction would be oppressive in any way. Thus, the court held that under these facts, equity jurisdiction should have been exercised by the district court in this case by granting the preliminary injunction.

■ Contrary to plaintiff's claim, *Bergen* is distinguishable from the facts of this case. First, in *Bergen* it was uncontested that defendant stopped doing business with plaintiff in retaliation for plaintiff's filing of the antitrust action. Here, however, there is no such evidence. There has been no hearing in this matter for the parties to present factual evidence, nor has plaintiff requested one. While defendant admits that it told plaintiff it would not give it any more movies during the pendency of the antitrust litigation, defendant also states in its answer to the amended complaint that the litigation was not the sole reason for refusing to license "Strictly Ballroom" to plaintiff. Thus, any other argument by plaintiff that defendant's acts are in retaliation for the antitrust litigation is purely speculative.

Second, even if defendant's acts were in retaliation for the lawsuit, the facts in this case are not nearly as compelling as those in *Bergen* to justify the grant of a preliminary injunction. Unlike *Bergen*, there is no irreparable harm suffered by plaintiff. The movies licensed by Miramax are not indispensable to plaintiff's survival as a business. Indeed, defendant presents evidence which demonstrates that plaintiff has consistently shown movies since plaintiff instituted this lawsuit, with some of them being shown on a first-run basis. Thus, plaintiff is able to obtain movies from other sources, and has in fact been doing so. There is no indication that plaintiff's customers only demand to see Miramax movies, or that other distributors' movies are not an adequate substitution.[3] The nature of the product is not the same as the drugs in *Bergen* which could not be readily obtained elsewhere, and which were vital to plaintiff's business as a full-service wholesaler. On the contrary, it would seem that plaintiff's customers would rather watch other distributors' movies being exhibited at the Roxy on a first-run basis than watch subsequent runs offered by Miramax which have previously been exhibited at the Ritz.

Moreover, the absence of irreparable harm is also evidenced by plaintiff's delay in bringing this motion. Plaintiff knew on August 19, 1993 when it filed its amended complaint that defendant refused to license any more films to plaintiff during the pendency of the antitrust litigation. Yet, plaintiff did not file the present motion until October 8, 1993, at least 50 days after plaintiff acquired this knowledge. Clearly plaintiff's own delay in filing the motion shows that irreparable harm, such as bankruptcy, is not imminent as is required for a preliminary injunction. *See Ecri v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3rd Cir.1987) (irreparable harm must be immediate); *Skehan v. Board of Trustees of Bloomsburg State College*, 353 F.Supp. 542, 543 ("Since an application for preliminary injunction is based upon an urgent need for

---

3. With regard to this point, we note that plaintiff's affidavit from the president of Orson, stating that the Roxy will go out of business or forced into bankruptcy if defendant's refusal is allowed to continue over the next few months, is not convincing. In light of the fact that plaintiff has been operating continuously ever since it filed the lawsuit, and the absence of any financial statements or projections from plaintiff showing how its business is suffering, there is no evidence of irreparable injury in this case. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3rd Cir.1989) (no irreparable injury where plaintiff's argument that it would be forced into bankruptcy was not supported by financial statements or projections in the record, plaintiff still maintained twenty percent of its business and could go elsewhere to secure other business).

the protection of Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required.").

Third, a preliminary injunction would not be easy to administer as it was in *Bergen*. The nature of the parties in this case is unlike a manufacturer and distributor where an order is placed and then filled by the other party. In the film distribution industry, simply because a movie theater places a bid does not mean it will receive the film. Defendant has the choice whether or not to license a film to a theater, and the decision to license a film involves various factors such as the terms of the bid, the type of the film, its anticipated audience, and public reaction to the film. *See Theee Movies of Tarzana v. Pacific Theatres, Inc.*, 828 F.2d 1395, 1397 (9th Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988) (for a discussion of this process). Should a preliminary injunction be ordered, it would be beyond the expertise of any court to determine whether or not defendant was complying with the injunction. With any given film, defendant's refusal to license could be the result of a sound business judgment, or it could be the result of a willful attempt to violate the injunction. However, the court would have no way of knowing why a particular film was not being licensed to plaintiff, nor could it properly order defendant to license a particular film to plaintiff.

Fourth, while plaintiff makes a valid attempt to argue that it will be unable to secure witnesses for trial because of other movie theaters' fear of retaliation, unlike *Bergen*, there is no evidence to support this, and as such, the argument amounts to sheer speculation. Plaintiff's other arguments are equally unconvincing. Any loss of business or goodwill, if any, from defendant's actions, are compensable by money damages. *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3rd Cir.1988) (plaintiff's loss of sales and service customers from defendant's actions were compensable by money damages). *See also DFW Metro Line Serv. v. Southwestern Bell Telephone Co.*, 901 F.2d 1267, 1269 (5th Cir.1990) (district court correctly concluded that any injury, including going out of business, could be calculated and recompensed in the form of money damages, especially any lost goodwill for a business which only operated for a short period of time).

The final distinguishing factor between this case and *Bergen* is that in this case defendant has asserted that granting plaintiff's motion will be oppressive to defendant. Defendant claims that if it is required to license its films to plaintiff, then other theaters in Philadelphia will decline to exhibit those same films, thereby resulting in money losses to defendant, as well as harm to its business relationships with other Philadelphia exhibitors. Given that plaintiff is able to obtain films from other distributors, and that there is no irreparable injury here, balancing of the harms to the parties weighs in favor of denying the preliminary injunction. *See Government of the Virgin Islands v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 285 (3rd Cir.1983) (court must consider potential harm to the nonmoving party as well as other interested parties).

Not only is this case distinguishable from *Bergen*, but it is also distinguishable from plaintiff's other cited cases. In *Reuters Limited v. United Press Internat'l, Inc.*, 903 F.2d 904 (2nd Cir.1990), the court cited *Bergen* for the proposition that a preliminary injunction was warranted to avoid disruption of plaintiff's supply of its unique product during the pendency of the main lawsuit. However, the court also recognized other reasons for granting the injunction, namely, plaintiff's customers had indicated a strong preference for the product, and had threatened to stop dealing with plaintiff should the product become unavailable. There is no such evidence of this presented by plaintiff in the present case. Further, while the court in *Blackwelder Furniture Co. v. Seilig Manu. Co.*, 550 F.2d 189 (4th Cir.1976) held that the preliminary injunction should have been granted, in part, due to the public interest rationale recognized in *Bergen*, the court also articulated other reasons for granting the injunction, such as the presence of irreparable harm to the plaintiff. Interestingly, neither case cited by plaintiff is a third circuit case.

Furthermore, while the third circuit recognized *Bergen's* public interest rationale for

preliminary injunctions in *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 803 (3rd Cir.1989) and stated that a court may substitute a finding of irreparable harm with a showing of probable cause that a statute authorizing preliminary injunctive relief has been violated, there has been no probable cause showing by plaintiff that defendant violated the antitrust laws in this case. In fact, plaintiff has not made any type of showing regarding the likelihood of success on the merits as is required for a preliminary injunction. *See Ecri*, 809 F.2d at 226. Other third circuit cases that have also considered *Bergen* have declined to follow it for various reasons. *See Hollander v. American Oil Co.*, 329 F.Supp. 1300 (W.D.Pa.1971) (*Bergen* inapplicable despite alleged antitrust violations where situation involved landlord-tenant relationship and plaintiff wanted to compel continuation of a lease); *Instant Delivery Corp. v. City Stores Co.*, 284 F.Supp. 941 (E.D.Pa.1968) (*Bergen* inapplicable to compel department stores to continue to use package delivery company because loss of customers was compensable and ascertainable, and *Bergen* scenario differed because court was not dealing with a full line, full service wholesaler).

Finally, another factor which contributed to the decision to deny plaintiff's motion merits discussion here. As previously stated, plaintiff does not actually seek to maintain the status quo by its request for a preliminary injunction. Rather, in plaintiff's initial proposed order (plaintiff submitted a second proposed order with its reply after defendant made this very argument), plaintiff seeks to have the availability of ten films of its own choice offered on the same terms as is offered to the Ritz for twelve months following the entry of this order. This clearly surpasses any agreement that existed between the parties prior to the institution of the antitrust lawsuit. In fact, plaintiff concedes that it in the past year and a half, out of fourteen films licensed to plaintiff, all but two were subsequent releases. When the facts before us indicate that there is no irreparable harm in this case nor is there any indication about plaintiff's likelihood of success on the merits, plaintiff cannot try to gain from the Court what it could not even gain through its own

dealings with defendant. To impose a preliminary injunction on plaintiff's proposed terms would not only give plaintiff a windfall, but it would set an unfortunate precedent that would benefit any plaintiff who seeks a preliminary injunction during the pendency of an antitrust lawsuit. We do not read *Bergen* as being so broad.

*Conclusion*

In sum, plaintiff has not met the standard for proving that a preliminary injunction is warranted, nor do the facts of this case fit within the narrow confines set out in *Bergen.* Accordingly, plaintiff's motion for a preliminary injunction to restore the status quo will be denied.