Richard LINDSAY, et al.

v.

**CITY OF PHILADELPHIA, et al.**

Civ. A. No. 93–6650.

United States District Court,
E.D. Pennsylvania.

Jan. 5, 1994.

Malcolm W. Berkowitz, Philadelphia, PA, for plaintiff.

Terrilyn R. Elliott, Asst. City Sol., Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

The question before me is whether, as a matter of law, the plaintiffs are entitled to a preliminary injunction to halt the implementation of Section 9–204 of the Philadelphia Code, which regulates sidewalk vending in Center City Philadelphia. After consideration of the memoranda filed by counsel for the plaintiffs and the City, and of the statements of counsel at oral argument, I will order an evidentiary hearing only on the plaintiffs' claim that Ordinance 9–204 was enforced in a discriminatory manner and will decline to issue a preliminary injunction on other grounds, because the plaintiffs have not shown a reasonable probability of success on the merits of their other claims, even assuming the facts to be as they allege.

This complaint and motion for preliminary injunction were brought by a group of African–Americans who are licensed as street vendors by the City of Philadelphia.[1] The plaintiffs seek to stop implementation of the newly enacted Section 9–204 of the Philadelphia Code, which limits street vending in Center City Philadelphia to specific locations and requires current vendors to apply and compete for those spots. The plaintiffs assert that they did not receive notice of the requirements of the new ordinance until it was too late, and that as a result, they were forced to vacate the vending locations they had occupied for periods ranging from two to ten years. The plaintiffs argue that they have been deprived of property without due process of law, that the City's actions in limiting the scope of their licenses before the end of the license term violates the constitutional prohibition against legislative impairment of contracts, and that the City ordinance was both enacted with a racially discriminatory purpose and enforced in a racially discriminatory manner. A hearing was held on the motion for preliminary injunction on December 30, 1993, at which the court heard oral argument but did not take evidence.

## FACTS

Because my decision at this point is based solely upon the briefs and arguments of counsel, I must take the facts to be as the plaintiffs allege them.

1. Plaintiffs seek to represent a class of similarly situated street vendors in Philadelphia. The issue of class certification is not yet before me.

The plaintiffs are all African–American street vendors who operated their businesses at various constant locations in Center City for two to ten years, until they were forced by the City to relocate in October and November of 1993. All of the plaintiffs had street vending licenses valid through the end of December, 1993.

Prior to the enactment of Section 9–204, a person who obtained a sidewalk vending license in Philadelphia was permitted to vend anywhere in the City where sidewalk vending was not expressly prohibited. While no vendor was licensed for any particular location, in practice many vendors set up at the same location every day. Under the new Section 9–204, a special license, assigning a particular location, is required to vend within the area known as Center City; the ordinance also limits the number of Center City vendors to 325. Section 9–204(7)(a).

Under the new ordinance, vending locations in Center City are allocated according to how long a particular vendor has been vending at or near that location. Applicants for Center City vending licenses are required to select five locations in which they are interested. Section 9–204(4)(a)(.3). Those who have vended at or near a particular location for at least two years prior to the enactment of the ordinance are ranked in order of seniority, and ties among those so ranked are resolved by lottery. Section 9–204(8)(d)(.1). The ordinance does not specify how notice is to be given of the new licensing requirements. The parties agree that the City did not mail notices or application forms to all holders of sidewalk vending licenses.

The plaintiffs allege that they did not receive word of the need to apply for a particular space until well after the March 13, 1993 application deadline; most claim that they did not know of the application process until they heard about it on the street in September 1993, or until they received orders to relocate their stands in October or November of 1993. They also allege that other vendors who were not African–American did receive

notice, and were able to participate in the allocation of vending spaces.

The City ordered the plaintiffs to vacate their usual vending locations by November 29, 1993. Some of the plaintiffs have moved to other locations in Center City, some have appealed their exclusion from the selection process to the Board of License and Inspection Review and have prevailed. All of the plaintiffs contend that they have suffered loss of their "economic freedom", and loss of property. Plaintiffs also claim that they were threatened with arrest or confiscation of their goods if they failed to abandon their former vending locations, though no plaintiff alleges that he or she is defying the City's order to relocate, or that he or she is currently threatened with arrest or confiscation of goods.

The plaintiffs also allege that the enforcement of Section 9–204 has reduced the number of African–American street vendors in Center City from around twenty-five to a present total of nine or ten (a reduction of at least 60%), while the total number of Center City vendors was reduced from around 500 to a little over 300 (a reduction of only about 40%).[2]

## DISCUSSION

### Preliminary Injunction Standards

 In order to obtain a preliminary injunction, plaintiffs must show both a reasonable likelihood that they will prevail on the merits of their claim, and that they are likely to suffer irreparable harm in the absence of an injunction. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir.1990). The district court should also consider the probable effects of a preliminary injunction on unrepresented parties, as well as the public interest. *Id.* The district court is not required to hold an evidentiary hearing where the movant has not alleged a sufficient factual or legal basis to support its claim. *Id.* at 1176.

 Plaintiffs urge this court to apply the preliminary injunction standard used by the

---

**2.** The City contends that the total number of Center City vendors was originally about 1000, which would put the reduction in all vendors at about 70%. At this point, since no evidence has been presented, I must take the facts as the plaintiffs allege them.

Second Circuit; that Circuit has eased the burden of showing likelihood of success on the merits by holding that a plaintiff seeking a preliminary injunction may prevail upon showing the threat of irreparable harm and *either* a likelihood of success on the merits *or* sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships which tips heavily in favor of granting the injunction. *Britt v. U.S. Army Corps of Engineers,* 769 F.2d 84 (2d Cir.1985). The law of this Circuit controls and will be applied.

## I. Likelihood of Success on the Merits

█ In their motion for a preliminary injunction, the plaintiffs argue three claims: A) that they have been deprived of property without due process; B) that the City's actions in limiting the scope of their licenses before the end of the license term violates the constitutional prohibition against legislative impairment of contracts; and C) that the City ordinance was both enacted with a racially discriminatory purpose and enforced in a racially discriminatory manner. I will also address the substantive due process and takings claims stated, but not argued by the plaintiffs. Only one of these—the claim that the ordinance was enforced in a discriminatory manner—merits an evidentiary hearing.[3]

### A. Plaintiffs' Due Process Claim

█ The threshold question in determining whether there has been a deprivation of property without due process of law is whether there is a protected interest involved, and only after the establishment of such an interest will the court enquire into the sufficiency of the process. *Mims v. Shapp,* 744 F.2d 946, 949 (3d Cir.1984). A plaintiff alleging a constitutionally protected property interest must show more than an unsubstantiated expectation of the benefit; the plaintiff must demonstrate entitlement to a property interest created expressly by state statute or regulation, arising from government policy or otherwise grounded in

state law. *Carter v. City of Philadelphia,* 989 F.2d 117, 120 (3d Cir.1993).

█ Plaintiffs argue that they had a protected property interest in the locations where they had vended for between two and ten years, and that they should have had individual notice and a hearing before being forced to vacate those locations. Each of the plaintiffs had been granted a sidewalk vending license under Section 9–205 of the Philadelphia Code, which gave them the right to vend anywhere in the City of Philadelphia where sidewalk vending was not prohibited. Once issued and relied upon, a license or permit is a constitutionally protected property interest which cannot be revoked by the government without due process. *Venrod Corp. v. Secretary of the Treasury of the Commonwealth of Puerto Rico,* 704 F.Supp. 21, 24 (D.P.R.1989).

In this case, however, the City did not revoke the plaintiffs' licenses, but only restricted their ability to vend in Center City, without affecting their right to vend elsewhere in the City. Section 9–205 neither limited nor entitled any particular vendor to any particular location. Moreover, that ordinance clearly retains for the City the power to prohibit vending in any location, with no "grandfathering" provision for vendors who had been accustomed to vending there. Under the terms of the ordinance which authorized the plaintiffs' sidewalk vending licenses, the City could have entirely prohibited vending within Center City. No sidewalk vending license could have given the plaintiffs an entitlement to a particular vending location before the enactment of Section 9–204.

The plaintiffs have not met their burden of demonstrating a protected property right to their customary vending locations, and so have not demonstrated a reasonable likelihood of success on their procedural due process claim.

---

3. Initially, the City argues that plaintiffs cannot show likelihood of success on the merits because they have not exhausted their administrative remedies with the City. Plaintiffs suing under 42 U.S.C. § 1983 are not required to exhaust ad-

ministrative remedies before bringing suit, with the one exception of prisoners, who must first utilize a grievance procedure. *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 500–01, 102 S.Ct. 2557, 2559–60, 73 L.Ed.2d 172 (1982).

## B. Plaintiffs' Impairment of Contracts Claim

 Plaintiffs seek to characterize their 1993 vending licenses as contracts with the City and argue that the City's limitation of those licenses violates the prohibition in Article I, Section 10 of the U.S. Constitution against legislative impairment of government contracts. The threshold question is whether the sidewalk vending license constituted a contract with the City which allowed the plaintiffs to vend anywhere in Philadelphia.

 Plaintiffs argue that the right to vend in Center City is inherent in their sidewalk vending licenses; I will therefore look to the licensing ordinance for the contractual relationship. A court will generally not treat a statute as a contract unless the "language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable" against the government. *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 18 n. 14, 97 S.Ct. 1505, 1515 n. 14, 52 L.Ed.2d 92 (1977). Section 9–205, under which the plaintiffs are licensed, contains none of the language usually associated with legal obligations. The sole benefit conferred by the statute is the opportunity to engage in sidewalk vending without facing criminal penalties. The ordinance does not evince any intent by the City to be legally obligated in any way, and particularly as to the areas available for sidewalk vending. In fact, the ordinance specifically reserves the City's right to prohibit sidewalk vending in "any ... location which the Council shall from time to time ordain". Section 9–205(8)(p).

Given the plaintiffs' failure to demonstrate the existence of an enforceable contract with the City, I will not discuss the issue of whether Section 9–204 substantially impairs the plaintiffs' expectations. The plaintiffs have not demonstrated a reasonable likelihood of success on the merits as to their impairment of contract claim.

## C. Plaintiffs' Equal Protection Claims

Plaintiffs make two arguments under the Equal Protection Clause: 1) that Section 9–204 was enacted with the intent to reduce the number of African–American street vendors in Center City; and 2) that the ordinance was deliberately implemented in a manner designed to deny notice of the application process to African–American vendors and deny them access to the space allocation process.

### 1. The claim that Section 9–204 was designed to have a discriminatory effect

 Section 9–204 is not discriminatory on its face; the only support for the plaintiffs' claim that the ordinance was intended to reduce the number of African–American vendors in Center City is the assertion that African–American vendors have been disproportionately affected by the general reduction in Center City vendors. The fact that a facially neutral law has a disproportionately adverse impact upon a racial minority does not, of itself, state an equal protection violation. *Washington v. Davis*, 426 U.S. 229, 240, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). The fact of a racially disproportionate impact is only one factor to be considered by the court in its evaluation of the "totality of the relevant facts". *Id.* at 242, 96 S.Ct. at 2048. In order to demonstrate that a facially neutral law was intended to have a discriminatory effect, the plaintiff must show not only that the decision maker was aware of the likely disparate impact, but that it selected or reaffirmed the chosen course of action at least in part "because of" and not merely "in spite of" its adverse effect. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). If the adverse impact of the government decision is obviously predictable, that may create a strong inference that the disproportionate result was intended, but such a conclusion is not compelled. *Feeney*, 442 U.S. at 279 n. 25, 99 S.Ct. at 2296 n. 25.

Here, the disproportionate reduction in African–American vendors is not an obvious result of the restriction of Center City vending locations, at least not in the same sense that the exclusion of most women was an obvious result of the preference for hiring veterans at issue in *Feeney*. Since the plain-

tiffs have not proffered any other evidence of the allegedly discriminatory motive, I cannot find that they have demonstrated a reasonable likelihood of success on their claim that the ordinance was intended to disfavor African–American vendors.

### 2. The claim that the City deliberately failed to give notice of the new application procedure to the plaintiffs because of their race

Plaintiffs also allege that, while they received no notice of the new application procedure under Section 9–204, vendors who were not African–American did receive notice, and that this was the result of a deliberate plan on the part of the City. These factual allegations, if true, could support a claim for denial of equal protection. I will therefore allow the plaintiffs to proceed on this issue for the purposes of seeking a preliminary injunction, and will order an evidentiary hearing on the issue of whether the plaintiffs were treated differently than sidewalk vendors who are not African–American, and, if so, whether that different treatment was intentional. Both elements must be present to support a claim for denial of equal protection. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

### D. The Substantive Due Process and Takings Arguments

Plaintiffs also characterize Section 9–204 as "arbitrary", "unreasonable", and "irrational", thus apparently stating a substantive due process challenge to the ordinance. A law comports with the requirements of substantive due process if that law is rationally related to a legitimate government interest. *Rogin v. Bensalem Township*, 616 F.2d 680, 689 (3d Cir.1980), *cert. denied sub nom. Mark–Garner Assoc., Inc. v. Bensalem Township*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Determination of whether a legislative scheme is rationally related to a legitimate government interest is a question of law for the court. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir.1991), *cert.*

*denied,* —— U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). Allegations that the government deliberately and arbitrarily abused its power, as when its actions are motivated by bias, bad faith, or improper motive, may support a finding of substantive due process violations. *Midnight Sessions,* 945 F.2d at 683.

Since plaintiffs do not explain why they view Section 9–204 as arbitrary or irrational, the only allegation of the complaint and motion for preliminary injunction which might support a substantive due process claim is the allegation that the City enacted Section 9–204 for the express purpose of reducing the number of African–American vendors in Center City. This argument is identical to the plaintiffs' argument that the enactment of Section 9–204 violates the Equal Protection Clause because of its discriminatory design, which I have already addressed.

Finally, both the plaintiffs and the City cite, at various times, cases relevant to a claim for taking of private property for public use without just compensation in violation of the Fifth Amendment. It is not clear whether the plaintiffs actually intend to argue that such a taking has occurred. Since the plaintiffs have not shown that they had a property interest in their customary vending locations, the only "property" which the City may have "taken" are the plaintiffs' 1993 vending licenses. "A taking is not established simply upon a showing of the denial of the ability to exploit a property interest that the plaintiffs heretofore had believed was available." *Midnight Sessions,* 945 F.2d at 676 (citations omitted). In general, where the regulation leaves the plaintiff with other reasonably beneficial uses for her property, there is no taking. *Id.* Here, the enactment of Section 9–204 did not interfere with the plaintiffs' ability to vend anywhere in Philadelphia other than Center City. In the absence of a more clearly defined takings claim, I cannot find a reasonable likelihood that the plaintiff would succeed upon such a claim.

## II. Irreparable Injury

The chief injury alleged by the plaintiffs is loss of business opportunity. While economic damages alone are generally

not enough to constitute irreparable harm, there is an exception in the instance where the economic loss may be severe enough to destroy a business. The plaintiffs are not currently prevented from vending outside of Center City, and several of them are vending within Center City, though not at their former locations. Nevertheless, I cannot, without more evidence, assume that the economic damages here are insufficient to constitute irreparable harm. I will therefore entertain evidence on this issue.

## ORDER

**AND NOW,** this 5th day of January 1994, it is **ORDERED** that the court shall hold an evidentiary hearing on plaintiffs' motion for preliminary injunction on **January 18, 1993 at 9:30 a.m.** in Courtroom 3B. The parties will have a **maximum** of three hours each to present evidence on the plaintiffs' claim that the City discriminated against them because of their race in the enforcement of Section 9–204 and on the issue of injury to the plaintiffs. The three hour limit includes cross-examination, which will be closely monitored by the court. It is further **ORDERED** that the motion for preliminary injunction is **DENIED** as to all other claims of the plaintiffs, without prejudice to their rights to seek a permanent injunction or other relief based on those claims.