## David Cutler Industries Ltd. v. Acme Markets Inc.

C.P. of Montgomery County, no. 95-01123.

*A. Richard Gerber* and *Ian A.L. Strogatz.* for appellant. *Andrew L. Braunfeld* and *Mary A. McLaughlin,* for appellee.

CARPENTER, *J.,* April 5, 1995—

## FACTS AND PROCEDURAL HISTORY

The appellant appeals an order of this court entered on January 31, 1995, which denied its motion for preliminary or special injunction. The order was entered after a careful consideration of the pleadings, the memorandum of law, six affidavits, and two long arguments. In denying the injunction this court found that the appellant had failed to demonstrate that it: would suffer immediate and irreparable harm; that an injunction would restore the status quo; that it had no adequate remedy at law; and that more harm would result from denying than from granting the injunction.

The appellant in this case, David Cutler Industries is in the business of collecting from various sources, different types of paper products which it then resells to mills for the production of recycled paper products. Some of its clients included Pathmark Stores, Thriftway Stores, Drug Emporium, and the appellee, Acme.

DCI first began collecting old corrugated cardboard, OCC, from Acme in 1982. In 1988, when the first agreement between DCI and Acme expired, Acme put their cardboard contract out for bid. DCI's bid was subsequently accepted by Acme and the two entered

into a written contract that would cover the next two years.

On February 6, 1991, DCI's second contract with Acme expired, however the parties continued to perform as they had under the contract. During this time period the parties began to discuss the prospect of expanding the contract. Specifically, Acme wanted DCI to go directly to the individual stores rather than the distribution centers to pick up the OCC, and DCI wanted a five-year term, or in the alternative a three-year term with a right of first refusal in years four and five. Over the next two years the parties failed to reach a satisfactory agreement, but in 1992, DCI began to pick up OCC at Acme's stores. Negotiations continued through 1993, yet the parties still could not reach terms that were agreeable to each other.

In January of 1994, however, events changed the discussions between the parties. The price of OCC began to rise dramatically and eventually the price reached a high of $135 per ton. During this time DCI did not pay Acme for the OCC it received, so in July of 1994, Acme contacted DCI to try to determine why the payments were not forthcoming. DCI claimed that Acme had not sent it invoices for the OCC despite the fact that DCI had in the past paid for OCC without invoices. Acme informed DCI that if it wanted to continue to negotiate for a new OCC contract it would have to bring its account current. DCI made some partial payments but stopped all payments for the months of October, November, December, and January.

On January 3, 1995, Acme through correspondence informed DCI that it had not accepted its bid, and that as of February 1, 1995, it no longer required DCI's services. As a result of this letter DCI filed a complaint seeking specific performance of an alleged oral agree-

ment that it had with Acme. DCI also filed a motion for a preliminary injunction seeking to prevent Acme from going ahead with the agreement to sell its OCC to another vendor, and forcing Acme to continue to sell to DCI.

A conference of record was held before this court on January 24, 1995, at which time DCI argued that they were experiencing immediate and irreparable harm, and as such were entitled to special injunctive relief. After listening to argument this court gave the parties six additional days in which they could file briefs, the memoranda of law, or affidavits supporting their positions, this court further stated, "... in the event I were to grant the special injunction and sign the order, it would be my intention to schedule the hearing the week of February 13, which would be the first block of time I would have available. So I'll just advise you so that you can make plans in the event we reach that point. Mr. Gerber: that's fine with us, your honor." (Notes of conference 1-24-95 p. 23.)

The parties next appeared before this court on February 10, 1995. At this time the appellant reargued its position that it believed it was entitled to injunctive relief. In support of its position the appellant argued that if the appellee was permitted to sever its business relations with the appellant he would suffer irreparable harm.

Based upon a careful review of the parties' two oral arguments, their memoranda of law, numerous affidavits, and the pleadings this court denied the appellant's request for a preliminary or special injunction.

As a result of the denial the appellant filed a notice of appeal to the Superior Court, and at the same time it requested that the Supreme Court of Pennsylvania grant extraordinary relief in the nature of a writ of

mandamus requiring that this court hold an evidentiary hearing.[1]

## ISSUES

(I) Whether this court properly denied the appellant's motion for a preliminary injunction?

(II) Whether this court properly denied the appellant's request for a preliminary injunction based on the extensive record before it?

## DISCUSSION

### I. *This Court Properly Denied the Appellant's Motion for a Preliminary Injunction*

The use of injunctive relief is an extraordinary remedy which should not be lightly granted. As a result a difficult burden of proof is placed on the moving party. Before a court can apply the standard required for the issuance of a preliminary injunction, it must first determine what type of injunction the appellant is seeking. There are two types of preliminary injunctions, one which is restrictive in nature and is used to maintain the status quo, and the second which goes beyond mere restraint and actually compels or mandates action. (15 Standard Pa. Practice §§83:10, 15.) The appellant claimed to be seeking the restrictive, "status quo" type injunction. At the oral argument before this court the appellant said, "in that context we made an application for a short term preliminary injunction to preserve the status quo as it had existed for two and a half years before February 1." (Notes of testimony of oral argument 2-10-95 p. 8.) For the purposes of a status quo injunction,

---

1. As of the date of this opinion we have not been informed of any action taken by the Pennsylvania Supreme Court.

the court would look at the relationship of the parties prior to the controversy. "The status quo to be maintained by a preliminary injunction is the last actual, peaceable and lawful non-contested status which preceded the pending controversy." *Lewis v. City of Harrisburg,* 158 Pa. Commw. 318, 327, 631 A.2d 807, 812 (1993) citing *Commonwealth v. Coward,* 489 Pa. 327, 341, 414 A.2d 91, 99 (1980). In the present case the last peaceable interaction between the parties was during the negotiation for the new OCC contract, and this status arguably ended in October 1994 when the appellant stopped paying the appellee for the OCC.

Despite how it is characterized, the preliminary injunction sought by the appellant would not have maintained the status quo between the parties since at the time of the controversy the parties were in the process of extended negotiation and had not reached a final agreement. Issuing an injunction would have created new contractual rights. Additionally, it would have forced the appellee to breach a written contract with a third party in order to continue to transact business with the appellant. Therefore, we believe that the appellant was seeking a mandatory injunction.

When making a determination regarding a "mandatory injunction" the court should be cautious and will hold the moving party to a rigorous standard of meeting the necessary elements. It is axiomatic that in order to be entitled to a preliminary injunction the moving party must establish *all* of the necessary elements.

In the case of *Lewis v. City of Harrisburg, supra,* the Commonwealth Court set out the standard used for the determination of a preliminary injunction as follows: "(1) that relief is necessary to prevent immediate and irreparable harm which cannot be com-

pensated by damages; (2) that greater injury will occur from refusing the injunction than from granting it; (3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; (4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) that the plaintiff's right to relief is clear." *Id.* at 324, 631 A.2d at 810.

The appellant argues that without the injunction he would suffer irreparable harm that cannot be remedied by an award of money damages. He asserts that he made: "commitments to deliver to Mills Corrugated, 4,000 tons [of OCC] a month, based on his commitment from Acme; that he made these commitments through his subcontractors; that he made these commitments for five years; that people are relying upon him to deliver, and if he fails to deliver this corrugated, which he is currently in the position of failing, because your honor refused to preserve the status quo, that this is going to destroy his reputation for dependability; that in the future, when this market turns around ... ." (Notes of oral argument 2-10-95 pp. 9-10.)

This allegation will not satisfy the immediate and irreparable harm standard. In *Orson Inc. v. Miramax Film Corp.,* 836 F. Supp. 309 (E.D. Pa. 1993) the United States District Court, discussing "irreparable harm" stated, "Nor is it enough for the harm to be serious or substantial, rather, it must be so peculiar in nature that money cannot compensate for the harm." *Id.* at 311. The Pennsylvania Commonwealth Court agrees with the U.S. District Court in requiring that the harm must be so egregious that money damages would not restore the parties. The Commonwealth Court stated, "To prevail on his petition for a permanent injunction, merchant must establish that his right to relief is clear;

that there is an urgent necessity to avoid an injury which cannot be compensated for by damages." *Merchant v. Commonwealth of Pennsylvania, State Board of Medicine,* 162 Pa. Commw. 332, 337, 638 A.2d 484, 487 (1994).

The harm must also be immediate and not threatened or anticipatory. In the case of *M.A. Jamal v. Commonwealth of Pennsylvania, Department of Corrections,* 121 Pa. Commw. 42, 549 A.2d 1369 (1988), the Commonwealth Court stated, "We likewise find no basis for the requested injunctive relief to forestall potential *future* violations of directives of the department. Injunctive relief is not available to eliminate a possible remote future injury or invasion of rights." *Id.* at 46, 549 A.2d at 1371. (emphasis in original) The appellant's own counsel stated that the damage to the appellant will occur when the market turns around in the future. (Notes of testimony of oral argument 2-10-95 p. 10.) It also should be pointed out that the appellee is not the only producer of OCC that the appellant deals with. In his bid for the second contract with Acme, the appellant lists a number of other large store chains that supply him including Thriftway Stores, Drug Emporium, Pathmark Stores, A&P Stores, IGA, and Woolworth's. (Affidavits in opposition to plaintiff's oral motion for special injunction, exhibit C.)

It is also not enough to allege that damage to one's business reputation and goodwill is irreparable harm. Because as stated above, the harm must be irreversible and not compensable by damages. See *Boehm v. University of Pennsylvania School of Veterinary Medicine,* 392 Pa. Super. 502, 573 A.2d 575 (1990). In this case the appellant has not shown as a matter of law that the injury would be irreversible and not compensable by damages. We believe that wrongful damage to a

business reputation can be remedied by money damages. Clearly this type of harm cannot be characterized as immediate or irreparable.

The standard also requires that the harm to the appellant be such that an award of money damages would not fairly compensate him. Again the appellant fails to satisfy this element. This alleged contract could be described as an output contract for a commodity. In this case the price for that commodity can be computed using the market that the parties used before the controversy, specifically the Official Board Market "yellow sheet." While it is true that the price for commodities varies over time it still is capable of being calculated for a given time period. Also any other damages that the appellant would suffer as a result of this action could be addressed with an award of consequential damages. Therefore, because the harm alleged by the appellant was not immediate or irreparable, and could be remedied by an award of money damages the appellant did not meet the threshold requirement for the issuance of a preliminary injunction.

The second element necessary for a preliminary injunction, that greater injury will occur from refusing the injunction than from granting it, was also not met by the appellant. In this case Acme entered into a written contract to sell its OCC with a third party, Maslo Inc. In the event that this court granted the injunction Acme would face the prospect of litigation against Maslo. The injunction would have had the effect of the court imposing a meeting of the minds on two parties that could not agree, and the additional effect of forcing two parties that did agree to breach their written agreement. Accordingly, the injunction if granted would have substantially harmed other interested parties and would not have benefited the public interest.

The third element that the appellant needed to prove was that the injunction would restore the parties to the status quo as it existed immediately before the alleged wrongful conduct. The difficulty that appellant had with establishing this element is that the status of the parties prior to the controversy was unclear. At the time of the controversy the parties were in the process of negotiating a new contract for the OCC. The negotiations spanned a time frame of more than two years, during which both parties traded a number of draft proposals. Clearly they expected to execute a written contract. However, they had yet to reach a satisfactory agreement. Thus in asking this court to return the parties to the status quo, in reality what was being requested was to have this court define the terms of a contract that the parties themselves could not define after two years of negotiating.

The fourth element that the appellant must have met was that the alleged wrong was manifest, and the injunction was reasonably suited to abate it. This is another position which is untenable by the appellant. The alleged wrong was not manifest where parties who in the past reduced their agreements to a written contract were unable to agree. Additionally, the injunction requested was vague and not narrowly tailored to address the alleged wrong.

The final element necessary for a preliminary injunction is that the plaintiff's right to injunctive relief is clear, as the plaintiff is likely to succeed on the merits of his claim. To address whether or not the appellant would likely succeed we must look to his allegations.

The appellant asserts that an enforceable oral contract existed between themselves and Acme. Appellant also claimed that the term of the contract was for five years.

These facts would bring the contract within the statute of frauds, and as such would render the contract unenforceable. Further, assuming arguendo that the contract did exist, the appellant still would be in breach of the agreement for failing to pay Acme for the OCC, for the months of October, November, December, and January, therefore it is obvious that the appellant does not have a clear right to relief, based on his likely success on the merits.

As was stated above, the elements for a preliminary injunction are cumulative and as such the appellant must prove all of them. See generally, *Leonard v. Thornburgh*, 75 Pa. Commw. 553, 463 A.2d 77 (1983). In this case he has failed to sustain that burden. The factual issues which are in dispute would not have an effect on the determination made by this court, because even if we resolved the disputes in favor of the appellant, he still would not as a matter of law have fulfilled the standard required for the issuance of a preliminary injunction.

Injunctive relief is extraordinary relief which the courts of this Commonwealth are hesitant to impose, especially when the nature of the injunctive relief goes beyond mere restriction and becomes mandatory. As a result, the burden on the moving party is very difficult to sustain and was not sustained here. Accordingly, we did not abuse our discretion in refusing to grant appellant's motion for a preliminary or special injunction.

II. *This Court Properly Denied the Appellant's Request for a Preliminary Injunction Based on the Extensive Record Before It*

The appellant asserts that this court erred by not holding a full evidentiary hearing in regard to its motion

for preliminary injunction. This assertion raises an issue as to whether this court is required to hold a full evidentiary hearing every time a petitioner moves for a preliminary injunction.

Pa.R.C.P. 1531 provides for the issuance of special relief by way of preliminary or special injunction. Rule 1531 states:

"(A) A court shall issue a preliminary or special injunction only after written notice and a hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. *In determining whether a preliminary or special injunction should be granted or whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.*" (emphasis added)

In applying this provision, the courts of this Commonwealth have held that there is no absolute right to be given an evidentiary hearing before the grant or denial of a preliminary or special injunction. *U.S. v. Richlyn Laboratories,* 822 F. Supp. 268 (1993); *Bell Fuel Corp. v. Cattolico,* 375 Pa. Super. 238, 544 A.2d 450 (1988); *Franklin Decorators Inc. v. Hende-Jon Furniture Showrooms Inc.,* 339 Pa. Super. 449, 489 A.2d 246 (1985). In the *Bell Fuel* case, the Superior Court stated, "A trial court has broad discretion in granting or denying a preliminary injunction. We will reverse such a decision only if the trial court abused its discretion or committed a palpable legal error." *Id.* at 244, 544 A.2d at 453. The *Bell Fuel* court goes further and states, "We must uphold the trial court's decision if it can

be sustained on any apparently reasonable ground." *Id.* In the present case the appellant asserts that it was error to deny the preliminary injunction without the benefit of an evidentiary hearing. To support this view the appellant cites a number of cases in which the appellate courts have held that it was error to deny a preliminary injunction without the benefit of a hearing, and while generally this assertion is correct, the situation sub judice can be distinguished from the others.

The appellant relies on the case of *Allegheny County v. Milk Control Commission,* 417 Pa. 22, 207 A.2d 838 (1965). In *Allegheny County,* the Supreme Court of Pennsylvania reversed the lower courts' denial of the application for a preliminary injunction. In doing so the court stated, "While the court did not dismiss the complaint, it did make a definitive order. We believe this should not have been done in the absence of a hearing, answer or proper motions filed and opportunity for the parties to be heard. The procedure was irregular . . . ." *Id.* at 25, 207 A.2d at 840. The significant factor in the Supreme Court of Pennsylvania's decision in *Allegheny County,* can be found in footnote number two, which refers to the record as consisting "only of the complaint and the order of [the] court." *Id.* at 24 n.2, 207 A.2d at 839 n.2. It is obvious that with such a scintilla of information to base its decision on, the denial of the injunction would be error. This is not the situation that the appellant brought before this court. In addition to their verified complaint and response thereto, the parties in this case were before this court twice for long argument,[2] additionally they sub-

---

2. There were two arguments before the Honorable William R. Carpenter, on January 24, 1994, and on February 10, 1995. At these arguments both parties argued their respective positions based on their pleadings and various affidavits. As a result the parties were clearly given a fair opportunity to be heard.

mitted memoranda of law, as well as extensive statements via affidavits, and other documents supporting their allegations.

Thus, unlike *Allegheny County,* this court had a wide range of material to base a determination on. The appellant further relies on a line of cases that deal with the preliminary injunctions as they relate to non-compete clauses. See *Beck Computing Services Inc. v. Anderson,* 362 Pa. Super. 505, 524 A.2d 990 (1987); *Bell Fuel, supra; Boyd v. Cooper,* 269 Pa. Super. 594, 410 A.2d 860 (1979). In all these cases the reviewing court found the record upon which the lower court based their decision to be lacking.

While the appellant asserts that this case involves disputed facts, this court found that the disputed facts did not concern the central issue before it, specifically, ' whether or not the appellant was entitled to a preliminary injunction. Supporting language for our position can be found in the case of *Lindsay v. City of Philadelphia,* 844 F. Supp. 229 (E.D. Pa. 1994). In *Lindsay,* the court stated, "the district court is not required to hold an evidentiary hearing where the movant has not alleged a sufficient factual or legal basis to support its claim." *Id.* at 233.

Likewise, the Pennsylvania Superior Court in the case of *Franklin Decorators, supra,* stated: "There is no absolute duty on the court to grant an evidentiary hearing on an application for a preliminary injunction; it is a matter for the discretion of the trial court, but a refusal to grant a hearing will be reversed where it is an abuse of discretion." *Id.* at 451-52, 489 A.2d at 247.

In the present case the parties had a full, complete, and fair opportunity to present their claims to this court. The record before this court was extensive. This court

relied on the plain language of Pa.R.C.P. 1531(a). We announced our intentions to the parties who did not object. We feel that we did not abuse our discretion in refusing to hold a six-day hearing[3] under the circumstances presented. We believe that a trial court should be permitted to decide whether or not a party is entitled to injunctive relief without holding a hearing, when it decides as a matter of law, from the pleadings, affidavits, motions, memoranda of law, and oral argument that the elements required for injunctive relief have not been established.

## CONCLUSION

Based on the foregoing analysis this court's order of January 31, 1995 should be affirmed.

3. (Notes of testimony of oral argument 2-10-95 p. 17.)